**SO ORDERED.**

**SIGNED this 18th day of July, 2025.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

TORIE L. COLLINS,

                **Debtor.**

Case No. 24-11235
Chapter 7

**Memorandum Order Granting Creditor's Motion to Modify the
<u>Discharge Injunction</u>**

Creditor Sean Prolago seeks to modify the discharge injunction in accordance with 11 U.S.C. § 524(e) to proceed to state court to obtain a judgment against Debtor Torie L. Collins and collect the same only from Collin's automobile insurance

provider, the Progressive Northwestern Insurance Company (Progressive).[1] Debtor opposes the motion.[2]

The Court grants Creditor's motion to modify the discharge injunction[3] because determining Debtor's liability arising from an automobile accident is a prerequisite to a finding of liability against Progressive. Because the ultimate goal of the state court action is not to execute on any judgment against Debtor personally, it is not prohibited by the discharge injunction. Creditor must comply with § 524(a)(2) and make no effort to collect the judgment against Debtor personally.

## I. Stipulated Facts

On November 11, 2020, Debtor and Creditor Prolago were involved in a car accident in Wichita, Kansas.[4] Creditor sustained injuries in the accident. At the time, Debtor had liability insurance coverage from Progressive with coverage limits of $50,000 per person and $100,000 per occurrence.

On January 26, 2022, Creditor's attorney sent a demand to Progressive offering to settle Creditor's claims against Debtor in exchange for the $50,000 policy limit. The Progressive claim notes show that the demand was received, and reserves

---

[1] All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated. Creditor is represented by Jeffrey A. Wilson. Debtor is represented by Mark J. Lazzo and Marc Alan Powell. Progressive did not enter an appearance nor participate in the briefing of this matter.

[2] Doc. 40.

[3] Doc. 34.

[4] To avoid repetitive citations, the following factual recitations were stipulated to by the parties and are contained in Docs. 39 and 40. The parties also stipulated to the correctness and admission of the attachments to Docs. 39 and 40 as well as the attachments to Docs. 24 and 29.

were moved to $50,000. According to the parties, the claim adjuster's notes indicate that "even if we only consider a small portion of the futures, [it] would appear this is a limits case."[5] Progressive made a counteroffer for $27,075, which Creditor rejected.

Creditor then filed suit against Debtor in Sedgwick County District Court on May 9, 2022 (Case No. 2022-000919-TC). In January of 2023, months after the state court action was filed, Progressive offered to pay Creditor the policy limit of $50,000.[6] Creditor rejected that offer.[7]

In 2023, Shelter Mutual Insurance Company (Shelter), Creditor's underinsured motorist carrier, intervened in the state court action. The state court action was set for trial on May 28, 2024. Debtor's state court counsel moved to continue the trial to afford Debtor time to name a medical expert. The continuance was granted, and trial was rescheduled for November 12, 2024. After an additional delay in designating the expert, trial was continued to December 16, 2024.

Twelve days before trial was set to begin, on December 4, 2024, Debtor filed a voluntary petition for Chapter 7 bankruptcy relief. In an email dated December 4, 2024, Debtor's state court counsel advised Creditor of the bankruptcy, saying:

> Given the circumstances, Torie Collins wants to avoid going to trial and has chosen to file for Chapter 7 bankruptcy relief. ... I'm told we can expect the bankruptcy

---

[5] The Court was not provided with the claim adjuster's notes. Further, it is not clear what "futures" refers to, but in this context, the Court assumes it is shorthand for future medical bills and treatments Creditor may require due to his injuries.

[6] Doc. 29, Debtor's Ex. 1, p. 12.

[7] *Id.* Debtor's Ex. 2, p. 13. In rejecting the offer, Creditor asserted that "when an insurance company negligently refuses to tender limits pre[-]suit and causes suit to be filed, that breach of duty cannot be cured by a post suit tender of limits." *Id.*

3

court to eliminate all of plaintiff's claims against Ms. Collins, although Progressive will need to pay her policy limits.[8]

## II. Procedural History

About three months post-petition, on March 11, 2025, Creditor filed a motion for relief from stay, asking the Court to grant relief under § 362(d)(1) to return to state court for the purpose of determining Debtor's liability and obtaining a judgment in excess of Debtor's policy limits so he could collect the judgment from Progressive.[9] Debtor objected, arguing Creditor's claims against Debtor would be discharged in the bankruptcy proceeding and thus, Creditor could not pursue claims against Debtor.[10] Shortly after Creditor filed its motion for relief from stay, on March 17, 2025, an order granting Debtor a discharge was entered.[11]

At the hearing on Creditor's motion for relief from stay on April 15, 2025, the Court informed Creditor that its motion was rendered moot by the intervening order discharging Debtor, as the automatic stay terminated when the discharge was granted.[12] Debtor did not consent to the Court treating Creditor's motion for relief from stay as a motion seeking to modify the discharge injunction pursuant to § 524(e).[13] The Court therefore denied Creditor's motion for relief from stay as moot,

---

[8] Doc. 24, Creditor's Ex. 2, p. 11.
[9] Doc. 24.
[10] Doc. 29.
[11] Doc. 27.
[12] *See* 11 U.S.C. § 362(c)(2) (the automatic stay continues "until the earliest of-- … if the case is a case under chapter 7 of this title concerning an individual … the time a discharge is granted or denied").
[13] *See In re Gibellino-Schultz*, 446 B.R. 733, 738-39 (Bankr. E.D. Pen. 2011) (finding that it was not possible to grant relief from the stay because the discharge had already been entered but, with the consent of the parties, treated the motion as one to modify the discharge injunction).

4

and at the request of the parties, the Court set a deadline to file a motion to modify the discharge injunction and briefs in support.

In Creditor's motion to modify and brief in support[14] Creditor argues Kansas law and the discharge injunction do not preclude him from continuing the state court action against Debtor because he seeks to collect only from Progressive, not from Debtor personally. Debtor, in her brief, asserts Creditor's claims against Progressive are meritless and made in bad faith because Creditor rejected a policy settlement offer from Progressive after the state court action had been filed.

Pursuant to the Court's instructions at the hearing on the motion to modify, the parties timely filed their joint stipulation,[15] indicating they agreed to submit the issue on stipulations and briefs and would waive the right to an evidentiary hearing and oral argument. With that, the Court took the matter under advisement.

## III. Analysis

This is a core matter under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), over which this Court may exercise subject matter jurisdiction.[16] Under § 105(a), the Court has the power to enforce and remedy

---

[14] Doc. 39.

[15] Doc. 43.

[16] See 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A), and Amended Order of Reference, D. Kan. S.O. 13-1.

5

violations of substantive provisions of the Code, including the discharge injunction under § 524(a)(2).[17] Venue is proper in this District.[18]

Section 524(a)(2) provides:

> A discharge in a case under this title—
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover from, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

The discharge injunction protects the debtor against subsequent actions to ensure the debtor receives the "fresh start" bankruptcy provides.[19]

Section 524(e), however, recognizes such a discharge does not extend to a third party; it provides the discharge "does not affect the liability of any other entity on … such debt."[20] Accordingly, it is "well established that [§ 524(e)] permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . the establishment of that liability is a

---

[17] *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306-07 (10th Cir. 2008). However, this power "cannot be exercised contrary to or in excess of the terms of the substantive Code provision being enforced." *Id.* at 1307. As noted above, Creditor argues the discharge injunction does not prohibit him from continuing the state court action against Debtor, but to prevent future contempt proceedings, he would prefer an order modifying the discharge injunction. Courts take differing positions on whether an order modifying a discharge injunction is required. Some courts hold that actions to recover debts from third parties are outside the scope of the discharge injunction, so modifying the discharge injunction is unnecessary. 4 *Collier on Bankruptcy* ¶ 524.05 (Richard Levin & Henry J. Sommer eds., 16th ed.). Others permit modification of the discharge injunction conditioned on the waiver of the right to collect from the debtor. *Id.*; *Buke, LLC, v. Eastburg (In re Eastburg)*, 447 B.R. 624, 633 (10th Cir. BAP 2011) (noting that the majority of courts conclude a discharge injunction can be modified) (citing cases).

[18] 28 U.S.C. § 1409(a).

[19] *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1142 (10th Cir. 1991) (citing *Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 883 F.2d 970, 972 (11th Cir. 1989)).

[20] *Id.; see generally In re Jet Fla. Sys., Inc.,* 883 F.2d at 975 (holding the purpose of § 524 is to protect the debtor and "not to shield third parties such as insurers who may be liable on behalf of the debtor.").

**6**

*prerequisite* to recovery from another entity."[21] The § 524(e) exception "hinges 'upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life.'"[22]

In Kansas, an insurer has the duty to act in good faith and with reasonable care in settling or defending claims.[23] If an insurer breaches its duty, it is well-established the insurer may be liable for damages in excess of the insured's policy limits, i.e., the excess judgment.[24] However, the cause of action against the insurer does not arise *until* the at-fault party's liability has been determined and a judgment in excess of the policy limits has been entered in the underlying tort action arising from the accident.[25]

---

[21] *In re Walker*, 927 F.2d at 1142 (emphasis added); *In re Paul*, 534 F.3d at 1307 ("Although § 524(a)(2) prohibits actions brought to collect a discharged debt from the debtor, it permits suits—even those brought to collect on debts a debtor has discharged—that formally name the debtor as a defendant but are brought to collect from a third party."); *Landsing Diversified Props. II v. Abel (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 601 n.7 (10th Cir. 1990) (noting "the fact that the debtor may be involved in the ensuing litigation, even named as a defendant where necessary to enable recovery against a codefendant (such as a liability insurer), does not permit invocation of section 524(a) to preclude a creditor's post-bankruptcy pursuit of a discharged claim against a third party"); *In re Jet Fla. Sys., Inc.,* 883 F.2d at 973 (concluding the plain language of § 524(e) "does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer"); *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 956 (Bankr. W.D. Va. 1986) ("Whereas the provisions of § 524 are intended to protect the debtor from personal liability, § 524(e) indicates that it was not to affect the liability of third parties nor prevent establishing such liability through whatever means required.") (internal citations omitted).

[22] *In re Walker*, 927 F.2d at 1142 *(*quoting *In re Jet Fla. Sys.*, 883 F.2d at 975).

[23] *Bollinger v. Nuss*, 202 Kan. 326, 333, 449 P.2d 502, 508 (Kan. 1969) (holding "the insurer, in defending and settling claims against its insured, owes to the insured the duty not only to act in good faith but also to act without negligence").

[24] *Granados v. Wilson*, 62 Kan. App. 2d 10, 19, 505 P.3d 794, 801 (Kan. App. 2022) (citing *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 (Kan. 1990); *Bollinger*, 202 Kan. at 326, Syl. ¶ 1; *Nungesser v. Bryant*, 283 Kan. 550, 560, 153 P.3d 1277, 1284-85 (Kan. 2007) (citing *Bollinger*, 202 Kan. at 332-33; *Bennett v. Conrady*, 180 Kan. 485, Syl. ¶ 3, 305 P.2d 823 (Kan. 1957); *Anderson v. Surety Co.*, 107 Kan. 375, Syl. ¶ 1, 191 Pac. 583 (Kan. 1920)).

[25] *Nungesser*, 283 Kan. at 562 ("Therefore, a cause of action for the bad-faith [or negligent] failure to settle a claim does not arise until there has been a final determination of the insured liability and the claimant's damages, including resolution of any appeals.") (quoting 44 Am. Jur. 2d, Insurance

7

Here, although Debtor's personal liability on the debt (if any) is discharged, § 524(e) makes it clear Progressive's liability is unaffected. Because establishing Debtor's liability and obtaining a judgment against her are prerequisites to establishing Progressive's liability on the debt under Kansas case law, § 524(e) permits Creditor to return to state court to adjudicate his personal injury claims against Debtor without violating the discharge injunction of § 524(a). Further, there is no evidence that continuing the state court action would "constitute sufficient prejudice" to Debtor's fresh start that would preclude granting Creditor relief under § 524, because Creditor expressly stated in its motion that no effort would be made to collect from Debtor personally, and, as Creditor asserts and Debtor does not refute, Progressive is paying for her defense in the state court action. Thus, she will not incur additional debt if the state court action is allowed to proceed.[26]

Even so, Debtor argues Creditor is precluded from pursuing an excess judgment against Progressive because, in rejecting Progressive's second settlement offer for policy limits, Creditor is precluded from asserting a bad faith claim against Progressive. However, the merits of Creditor's *potential* claims against Progressive

---

§ 1394, at 622) (emphasis in original omitted). A cause of action for bad-faith or negligence can be brought by the insured or the judgment creditor. *See Nichols v. Marshall*, 491 F.2d 177, 183 (10th Cir. 1974) (examining Kansas case law to find "a judgment creditor may proceed by garnishment against a tort-feasor's insurer for the unpaid balance of the judgment which is in excess of the policy limits where the insurer refused to settle within policy limits by virtue of negligence or bad faith") (citing *Burlington & M.R.R. Co. v. Thompson*, 31 Kan. 180, 1 P. 622 (1884)). Debtor's Insurance Policy specifically states Progressive cannot be sued for a judgment arising from an accident "until the obligation of an insured person … to pay is finally determined either by judgment after trial against that person" or by written agreement. Doc. 39 Creditor's Ex. 2, p. 36.

[26] Doc. 39, p. 9; *see also In re Walker*, 927 F.2d at 1143 (allowing relief from the discharge injunction despite the possibility the debtor may incur legal expenses); *In re Paul*, 534 F.3d at 1307 (requiring the debtor to "bear such collateral burdens of litigation as those relating to discovery (as opposed to the actual defense of the action and potential liability for the judgment), does not run afoul of § 524(a)(2)").

8

are neither ripe for adjudication, nor before the Court. Moreover, the likelihood of success on the merits of Creditor's potential claims against Progressive is immaterial to the Court's decision because—regardless of the outcome of litigation—Debtor will not be personally liable on the judgment and Creditor cannot collect it from her without violating the discharge injunction and this Court's order.

## IV. Conclusion

The Court grants Creditor's motion to modify the discharge injunction[27] for the limited purpose of returning to state court to adjudicate Debtor's liability and, if appropriate, obtain a judgment against her. Doing so is a necessary prerequisite to the creditor's ability to attempt to collect from Progressive. Creditor must continue to comply with § 524(a)(2) and make no effort to collect any judgment against Debtor personally.

**It is so ordered.**

### ###

---

[27] Doc. 34.

9